IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | |
|---|---|
| James M. Tennant,      ) | Civil Action No. 2:12-0370-RMG-BM |
|          ) | |
|       Plaintiff,      ) | |
| v.      ) | |
|          ) | |
| City of Georgetown, a Municipal      ) | **REPORT AND RECOMMENDATION** |
| Corporation; Paul Gardner; Ann Mercer;      ) | |
| Cindy Howard; Brendon M. Barber, Sr.;      ) | |
| and Jack M. Scoville, Jr.; in their      ) | |
| individual and official capacities,      ) | |
|          ) | |
|       Defendants.      ) | |
| _____ ) | |

This lawsuit has been filed by the Plaintiff, pro se, against the City of Georgetown as well as several individuals.  This action arises out of an appearance by the Plaintiff at a Georgetown City Council meeting on February 18, 2010, and related incidents.  Plaintiff alleges that the named Defendants, all officials of the City of Georgetown, violated his constitutional rights. Plaintiff also asserts several state law causes of action.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on October 4, 2013.  As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on October 7, 2013, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response.  Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby



ending his case. After receiving an extension of time to respond, Plaintiff filed a response in opposition to the Defendants' motion on December 20, 2013, following which a reply memorandum was filed on December 30, 2013.

The Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified complaint[2] that on February 18, 2010 he was on the agenda for the City Council meeting to discuss some issues of city financing, in particular a sum of money contained in city bank and investment accounts referenced as "unrestricted net assets". Plaintiff alleges that prior to the City Council meeting, he had made public statements disclosing the existence of this money, while the Defendants Barber (a City Council member) and Scoville (Mayor) had made public statements that Plaintiff was wrong and that there was no money existing as "unrestricted net assets". Plaintiff alleges that prior to being recognized to speak, the City Auditor provided Council with an executive overview in which he reported that the City did have a lessor amount of money in cash and investments that represented unrestricted net assets. However, upon questioning by Barber, the City Auditor (Robert Harper) "backed off" from his previous report

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



and made a general statement that the City was financially very sound and had a good reserve fund balance.

Plaintiff alleges that shortly after Mr. Harper had finished speaking, Scoville called on the Plaintiff to address the meeting. Plaintiff alleges that when he started to speak he addressed the Defendant Councilman Barber by his first name and stated "let's talk about it", at which time Barber objected and told Mayor Scoville that Plaintiff was supposed to be addressing the Mayor and Council, and that he was not going to get into a one-on-one with the Plaintiff. Plaintiff then addressed Councilman Barber again by his first name, to which Barber responded "You don't want me to step from behind this podium". Plaintiff alleges Barber also told him "You got the wrong, the wrong council member", following which the City Administrator (Chris Eldridge) laughed. Plaintiff alleges that he then told council that he could not be involved in a situation where a city council member said something like that, that he no longer wished to address the council, and that he was leaving. Plaintiff alleges that Scoville then said "well thank you", and that after a long pause, during which Plaintiff left the city council chambers, he stated "Why didn't we think about that a long time ago?" Plaintiff alleges that City Clerk Mercer, instead of including the details of the colloquy set forth hereinabove, included only a paragraph in her official minutes of the meeting that stated as follows:

> "Mr. Tennant stated to council Member Barber he wanted to talk about the $21 million that Mr. Barber brought up. Council Member Barber told the Mayor that Mr. Tennant is supposed to be addressing Mayor and Council. Mr. Tennant left the meeting before addressing Council on city finances."

Plaintiff further alleges that on May 13, 2010, he went to City Hall to review documents requested under the South Carolina Freedom of Information Act (FOIA), at which time

3



the Defendant Howard (Assistant to the Administrator and Risk Manager of the City) told him that he had to review the documents in her office and refused to allow Plaintiff to electronically copy the documents using his own computer and scanner combination.  Plaintiff alleges he told Howard that the City had previously allowed him to use a conference room to review documents and had also allowed him to make his own copies instead of paying the City a per page fee for copies, but that Howard refused to allow him to review the materials in private or to make his own copies.  Plaintiff also alleges that, at the same time, he asked Defendant City Clerk Mercer why she had refused to properly execute the responsibilities of her job by not fully reporting in her meeting minutes the exchange that had occurred on February 18, 2010.  Plaintiff alleges that Mercer denied any failure to fully report, while City Administrator Eldridge told him that Mercer was doing the best job she could.  Plaintiff alleges that he then left City Hall without reviewing the documents he had sought pursuant to the FOIA.

Plaintiff alleges that the following day, May 14, 2010, he received a letter from Howard advising him that he could review and copy documents using his own equipment, but that "as City employees have been put in fear of violence based on your conduct May 13th in the Administrative Offices, please note that any further review of meetings with City employees at City Hall will need to take place with law enforcement present".  Plaintiff alleges that he had never been formally charged as a result of any incidents involving the City, and that the Defendants expressed fear of violence "is a pretense for a fear of being held accountable by a citizen that has been willing to speak truth to power".  Plaintiff further alleges "on information and belief" that false police reports have been filed against him by Howard and Mercer.

Plaintiff alleges that since these events, he has been required on several occasions to



have police present when he reviews FOIA documents at City Hall, and then even though he has complained to the Defendant Gardner (Police Chief) that he is being unjustly and illegally treated like a criminal and is being unfairly singled out, he is nevertheless being required to have a police officer present while meeting with employees of the City. Plaintiff alleges that he told Police Chief Gardner in the presence of another police officer that the continued presence of City police officers, absent any viable official complaint or real basis for fear of violence, constituted illegal official police and state sponsored harassment, intimidation and defamation of character.

Plaintiff alleges that shortly after this meeting with Gardner, he made an unannounced visit to City Hall on June 23, 2011 seeking to deliver a petition to the City Administrator, City Attorney and Mayor Scoville. Plaintiff alleges that in this petition he stated he wanted to discuss his various and long standing concerns and issues with the City of Georgetown. Plaintiff alleges he handed his petition to an unknown city employee and requested a signature from the city employee on his copy of the petition to acknowledge receipt, and that while he was waiting a city police officer was called without his knowledge. Plaintiff alleges that only after the police officer arrived did Howard finally come out with the officer and told Plaintiff that he could not come to City Hall without a police officer being present. Plaintiff alleges that Howard also refused to sign an acknowledgment of receipt of the petition, so he left.

In his **First Cause of Action**, Plaintiff asserts a violation of his First and Fourteenth Amendment rights by the City of Georgetown and the individual Defendants Barber and Scoville for denying him his right to peaceably exercise his fundamental First Amendment freedom of speech, assembly and petition. In his **Second Cause of Action**, Plaintiff alleges that the Defendant City of Georgetown, as well as the individual Defendants Scoville, Howard, Mercer and Gardner



all conspired to deny him the equal protection of the laws in violation of 42 U.S.C. § 1985(3), by putting into place policies to deny Plaintiff his First and Fourteenth Amendment rights which were not applied to other individuals who were in agreement with the City or who did not wish to criticize city employees or elected officials.  In his **Third Cause of Action**, Plaintiff asserts a pendant state law claim for defamation against Howard and Mercer.  In his **Fourth Cause of Action**, Plaintiff asserts a pendant state law claim for civil assault against the Defendant Barber.  In his **Fifth Cause of Action**, Plaintiff asserts a pendant state law claim for conspiracy to defame against the Defendants Howard and Mercer.  In his **Sixth Cause of Action**, Plaintiff asserts a pendant state law claim against the Defendants Barber and Scoville for conspiracy to commit civil assault.  Plaintiff has attached to his Complaint what purports to be an affidavit from Lee Padgett, who attests that she was present as the City Council meeting on February 18, 2010 and saw the colloquy between Plaintiff and City Council as is set forth in the Complaint.  Plaintiff seeks declaratory and/or injunctive relief, along with monetary damages.  See generally, Plaintiff's verified Complaint with attached exhibit.

In support of summary judgment, the Defendants have submitted deposition excerpts of the Defendants Barber, Scoville, Mercer, Gardner and Howard.  Defendants have also submitted deposition excerpts from Plaintiff's deposition, as well as from the depositions of City Council Members Paige Sawyer and Jeanette Ard.

Defendants have also submitted a copy of a police incident report from May 13, 2010, where "Sgt. Clark" responded to Georgetown City Hall in reference to a call that the Plaintiff was being disorderly.  The text of the incident reports states that statements were obtained from Cynthia Howard, Chris Eldridge, Debra Mumford and Ann Mercer, who advised that Plaintiff had come into



the office for a meeting about FOI requests and "immediately started getting loud with the employees because they did not answer his questions the way he wanted them answered and kept asking the same questions over and over". The text further indicates that Plaintiff then went into a conference room and interrupted a personnel meeting, at which time Mumford went and pressed her panic button for the police to respond because Plaintiff was "getting more irate". The text indicates that Plaintiff then left the building by slamming the door open. Finally, the text indicates that Plaintiff sent an email to Howard that talked about how the City was not following the law and threatening a lawsuit. See Defendants' Exhibit G.

Defendants have also attached a copy of a letter to the Plaintiff from Cynthia Howard dated May 14, 2010 concerning his FOI request and how and when these documents could be obtained, and ending with the notification that any further review or meetings by Plaintiff with city employees at City Hall would need to take place with law enforcement present as city employees had been put in fear of violence based on his conduct on May 13th in the administrative offices. See Defendant's Exhibit H.

The Defendants have also provided a copy of a second incident report dated May 27, 2010, where a "Deputy Whisner" had responded to Georgetown City Hall in reference to an unwanted person. This incident report reflects that upon arrival Whisner was advised by Officer Shelly Brantley that the Plaintiff had come to City Hall and was causing a problem with administrative personnel. The text of this incident report further states that Whisner was advised that several of the City personnel were afraid of Plaintiff and what his demeanor was and that Plaintiff had come to City Hall several other times being very verbally abusive with city employees. Statements were obtained from Kevin Rapps, Ann Mercer, Walt Ackerman, Jessica Miller, Joseph



Tanner and Cynthia Howard in regard to this incident. Whisner also obtained a copy of an email that Plaintiff had sent to City Hall on May 27, 2010, and noted that Plaintiff was at City Hall that day questioning the letter he had previously received and that he seemed agitated, which was why the employees had called the police. See Defendants' Exhibit I (including attached statements from witnesses).

The Defendants have also submitted a copy of an additional letter to the Plaintiff from Howard dated June 15, 2010 concerning FOI requests and how he is to obtain the requested material, and reminding Plaintiff that based on his conduct of May 13 and May 27, and because city employees had been put in fear of violence based on his conduct, that any further review or meetings with city employees at City Hall would need to take place with law enforcement present, and that therefore his business at City Hall needed to be scheduled. See Defendants' Exhibit J. A similar letter dated September 14, 2011 containing FOI information and these same instructions has been submitted by the Defendants as attached Exhibit K. See generally, Defendants' Exhibits.

As attachments to his memorandum in opposition to summary judgment, Plaintiff has submitted several exhibits which purport to be transcript excerpts from the City Council meeting of February 18, 2010, as well as several deposition excerpts, all of which are typed transcriptions by the Plaintiff himself. Plaintiff has also submitted copies of purported transcript excerpts (again all typed by the Plaintiff) of a town hall radio program and a City Council meeting on June 23, 2011.[3] Plaintiff has further submitted excerpts from what appear to be regular deposition transcriptions

---

[3]Plaintiff contends that these transcripts should be considered for purposes of the pending motion, and since the Defendants have not objected and these transcripts do not appear to be contested, the undersigned has considered them for summary judgment purposes *only*.



from various depositions.

Plaintiff has also submitted a copy of the voluntary statement of Joseph Tanner addressing the confrontation of May 27, 2010, a copy of the meeting minutes of the City Council meeting of February 18, 2010, a page headlined "City Financials", a computer generated copy of an article from the Georgetown Times dated October 22, 2009 (discussing a campaign event and identifying the Plaintiff as the Republican mayoral candidate), a copy of an email from the Plaintiff to several city employees dated December 28, 2009 making an FOI request, a copy of the City's response dated January 28, 2010, copies of several other FOIA requests with City responses, a copy of another computer generated article from the Georgetown Times dated March 28, 2010 and headlined "Freedom of Information Requests Tax City", and copies of the minutes of a City Council meeting from June 23, 2011. See Plaintiff's Exhibits A - U.

Plaintiff has also submitted affidavits from several individuals who were present at the City Council meeting of February 18, 2010, and who support Plaintiff's version of the events of that day. See Plaintiff's Exhibits V - X. Plaintiff has also provided an affidavit from Charles Richards, who attests to Plaintiff's good character and states that Mayor Scoville has animosity towards the Plaintiff; see Plaintiff's Exhibit AA; and a similar affidavit from Paul Fuener, who attests that he has never known Plaintiff to be a violent individual or have a propensity for violence. See Plaintiff's Exhibit BB. Plaintiff has also provided an affidavit from Steve Rothrock, who attests that he has also at times found himself frustrated and disappointed by the City's responses to his FOIA requests. Rothrock further attests that he has never known Plaintiff to be violent, and that it is his understanding that Plaintiff is the only person in the City who is required to have police present while meeting with City officials or viewing FOIA documents. See Plaintiff's Exhibit CC.



Plaintiff has also attached a hand typed document titled "Codes and Ordinances" which purports to be Georgetown City Code Section 2-19, dealing with disruptive conduct. <u>See</u> Plaintiff's Exhibit DD.

Finally, Plaintiff has submitted two affidavits from himself, the first of which details an incident Plaintiff attests occurred on August 25, 2006, when he was arrested while at the City of Georgetown Police Station trying to obtain some FOIA material and called the Police Captain an "asshole". Plaintiff attests in this affidavit that, in using this term, he was expressing his political opinion regarding the hierarchy of Georgetown and their denial of his FOIA right to inspect police records. Plaintiff attests that this charge for disorderly conduct was eventually <u>nolle</u> <u>prossed</u> approximately eight months later. Plaintiff also again details the alleged incidents of February 18, 2010 and May 13, 2010. <u>See</u> Plaintiff's Exhibit Y. In his second affidavit, Plaintiff details his "long history" with the City of Georgetown going back to the late 1990s, controversies which had "sown and fertilized the seeds of animus" between Plaintiff and the City leading up to the City Council meeting of February 18, 2010. Plaintiff then goes on to discuss several allegations of misconduct or wrongdoing by the City or City employees, as well as again discussing the events set forth in his Verified Complaint. <u>See</u> Plaintiff's Exhibit Z.

As attachments to their reply memorandum, Defendants have submitted additional deposition excerpts from the deposition of Chris Eldridge, as well as copy of S.C. Code Ann. § 30-4-100, part of the Freedom of Information Act, referring to injunctive relief and the award of costs and attorneys fees. Both parties also reference a video recording of the City Council meeting of February 18, 2010, showing the events of that day, and which the undersigned has reviewed. <u>See</u>

10



www.martytennant.com; see also http://goo.gl/DRU719.[4]

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

### (First Cause of Action)

In his First Cause of Action, Plaintiff alleges that the Defendant City of Georgetown,

---

[4]The undersigned does not make any finding as to whether this video may be submitted at trial as evidence. However, since both parties reference this video and neither party appears to object to its consideration or validity, the undersigned has considered it for purposes of summary judgment *only*.



as well as City Councilman Barber and Mayor Scoville, violated his First and Fourteenth Amendment rights "by cutting off and fearfully interrupting [Plaintiff's] clearly established right to peaceably exercise his fundamental First Amendment freedom of speech, assembly and petition rights, while preserving the rights of other individuals placed on the official City Council agenda attending City Council meetings to peaceably petition, assemble and express themselves on the issues of public importance without such threats".

The First Amendment provides that Congress shall make no law abridging the freedom of speech or the right of the people peaceably to assemble and to petition the government for a redress of grievances.  The rights guaranteed by the First Amendment apply against the states and local governmental entities, such as the City of Georgetown, through their incorporation into the due process clause of the Fourteenth Amendment.  <u>See</u>, e.g., <u>Gidlow v. People of New York</u>, 268 U.S. 652, 666 (1925); <u>Oliver v. United States</u>, 466 U.S. 170, 186 n.3 (1984); <u>Elfbrandt v. Russell</u>, 384 U.S. 11, 18 (1966).  Here, Plaintiff alleges that his First Amendment rights were violated by the City, Barber and Scoville when they cut him off and "fearfully" interrupted his attempt to peaceably exercise his fundamental First Amendment freedom of speech, assembly and petition rights when he was attempting to peaceably communicate information regarding a City Council agenda item. <u>See</u> <u>Complaint</u>, ¶ 45.  As City officials, Barber and Scoville are both subject to suit for damages in their individual capacities under § 1983 for violations of an individual's constitutional rights.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989); <u>Hafer v. Melo</u>, 112 S.Ct. 358, 365 (1991); <u>Goodmon v. Rockefeller</u>, 947 F.2d 1186 (4th Cir. 1991); <u>Inmates v. Owens</u>, 561 F.2d 560 (4th Cir. 1977).  With respect to Plaintiff's constitutional claims against the City of Georgetown, this Defendant may be liable under § 1983 only if "the action that is alleged to be unconstitutional



12

implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Social Servs., 436 U.S. 658, 690-691 (1978).

Turning initially to Plaintiff's Complaint against the City, it is readily apparent that the City of Georgetown itself is entitled to dismissal as a party Defendant under this claim, as there is no evidence that "the action that is alleged to be unconstitutional implement[ed] or execut[ed] a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers;" Monell, 436 U.S. at 690-691; and there is no governmental liability under § 1983 merely because a governmental entity might employ a tortfeasor. A city may itself only be liable for damages when the execution of a policy or custom of the town itself results in the alleged injury. Id. at 694; see also Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) [A municipality may be liable under § 1983 for the violation of a Plaintiff's constitutional rights "only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom'"]. Plaintiff has presented no evidence to show that his treatment at the Council meeting at issue or his not being able to finish his presentation at this City Council meeting was due to any policy or custom of the City of Georgetown as "officially adopted and promulgated by that body's officers. Monell, 436 U.S. at 690-691. Rather, viewing the facts presented in the light most favorable to the Plaintiff, Plaintiff failed to finish his presentation when he was interrupted by Councilman Barber, who made comments to which Plaintiff took offense. Plaintiff has identified no policy or custom of the City of Georgetown that made Barber's comments appropriate, and even Plaintiff concedes that during the course of these events, Mayor Scoville was attempting to gavel the Plaintiff and Barber back to order so that the meeting could proceed. www.martytennant.com;



see also http://goo.gl/DRU719; Sawyer Deposition, p. 109; see also Plaintiff's Exhibit A. However, Plaintiff instead decided to leave of his own volition, which is clearly evident in the videotape of the incident. www.martytennant.com; see also http://goo.gl/DRU719.

Hence, even if Barber's conduct could be deemed to have violated Plaintiff's First Amendment rights, Plaintiff has presented no evidence to show that Barber's spontaneous comments and Plaintiff's subsequent decision to discontinue with his presentation was a result of any policy or practice promulgated, implemented, condoned, or put into place by any official policy of the City of Georgetown or City officials. Leatherman v. Tarrant County Narcotics Intelligence & Coordination, 507 U.S. 163, 166 (1993) ["[A] municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury"]; Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988). Plaintiff's argument that the City's failure to censure or impose some other type of punishment on Barber after the fact somehow converted his conduct into an official policy or custom of the City under the facts presented is also without merit. Cf. Gillette v. Delmore, 979 F.2d 1342, 1346-1348 (9th Cir. 1992); Hudgens v. Grimstead, No. 08-1599, 2010 WL 114463 at *6 (W.D.Wash. Jan. 6, 2010) ["[A]llegations of random acts or single instances of misconduct are insufficient to establish municipal custom."]; Henderson v. Anderson, 463 Fed.Appx. 247, 250-251 (5th Cir. Feb. 23, 2012); [refusing to find "ratification" simply because a municipality failed to punish an actor for actions on one occasion, and refusing to infer an official policy from a single isolated failure to punish an officer's misconduct.](citing Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992). Therefore, the City of Georgetown is entitled to dismissal as a party Defendant under Plaintiff's First Cause of Action. Milligan, 743, F.2d at 229 [A municipality may be liable under § 1983 for the



violation of a Plaintiff's constitutional rights "only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom'"].

Similarly, the facts and evidence before the Court, again considered in the light most favorable to the Plaintiff, fail to give rise to a genuine issue of fact as to whether Mayor Scoville violated Plaintiff's First Amendment rights. The evidence shows that Mayor Scoville was presiding over the City Council meeting at issue, and that in this capacity he recognized Plaintiff to make a presentation to Council with respect to Plaintiff's concerns over some City financing or budgetary issues. See Plaintiff's Exhibit A. Then, when Plaintiff started his presentation, he addressed Councilman Barber personally by his first name, to which Barber objected to Mayor Scoville as the presiding officer that Plaintiff was supposed to be addressing the Mayor and Council, not him personally, and that he [Barber] was not going to "get into a one-on-one with [Plaintiff]". The evidence shows that Plaintiff then again addressed Councilman Barber personally and by his first name, and that during the subsequent verbal back and forth between the Plaintiff and Barber, Mayor Scoville was attempting to bring the meeting back to order by banging his gavel while addressing *both* individuals. See Complaint, ¶ 24; see also www.martytennant.com; see also http://goo.gl/DRU719; Plaintiff's Exhibit A. It was the Plaintiff who then told the Mayor and Council that he was not going to "be involved in a situation where a City Council member says something like that. I don't even want to address you now. Goodby.", to which Mayor Scoville responded "Well, thank you. O.K..". www.martytennant.com; see also http://goo.gl/DRU719; Plaintiff's Exhibit A.

Mayor Scoville never told Plaintiff he could not address the Council, or attempt to limit his right to do so in any way. While, after a "long pause" (during which the video shows



Plaintiff left the City Council chambers), Mayor Scoville stated "Why didn't we think about that a long time ago?", this obviously facetious comment after Plaintiff had already left the Council Chambers played no role in the incident at issue in this lawsuit; see also Scoville Deposition, p. 81; and there is certainly no evidence to show that at any time during the incident at issue Mayor Scoville ever engaged in any conduct that could be deemed to have prevented or intended to prevent Plaintiff from exercising his First Amendment rights or from making his presentation to the Council. See also, cf. Hudgens, 2010 WL 114463 at *6 ["Although ratification of the decisions of a subordinate by an official with final decision-making authority can constitute a municipal policy, mere acquiescence in a single instance of alleged unconstitutional conduct is not sufficient to demonstrate ratification of a subordinate's acts."](citing Gillette, 979 F.2d at 1346-1348). Therefore, the Defendant Scoville is also entitled to dismissal as a party Defendant in the Plaintiff's First Cause of Action.

Finally, with respect to the Defendant Barber, the evidence shows that Plaintiff was attempting to address City Council at the time in question, and there is no question but that Plaintiff and Barber verbally sparred with each other prior to Plaintiff exiting the Council Chamber. By alleging that Barber cut him off and "fearfully" interrupted his attempt to peaceably communicate information regarding a City Council agenda item, Plaintiff has set forth a First Amendment claim, as Plaintiff's attempt to address Council on city budgetary issues was clearly protected by the First Amendment. See Connick v. Myers, 461 U.S. 138, 148, n. 7 (1983)["The inquiry into the protected status of speech is one of law, not fact"]. "The First Amendment was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes designed by the people . . . Speech concerning public affairs is more than self-expression; it is the essence of self-



government." Id., at 145, [Internal citations omitted]. Further, the government's power to control a speaker's access to a designated public forum, such as the public comment period of a City Council meeting, is subject to the same First Amendment constraints as apply to traditional public forums, meaning that the time, place, and manner of expression may be regulated only insofar as such regulations are content neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication. Perry Education Association v. Perry Local Educators' Assoc., 460 U.S. 37, 45 (1983); see also Estiverne v. Louisiana State Bar Assoc., 863 F.2d 371, 376 (5th Cir. 1989).

However, while Plaintiff had a First Amendment *right* to address City Council under the facts presented, the undersigned does not find that Plaintiff's evidence presents a genuine issue of fact as to whether a First Amendment *violation* occurred in this case.

First, as has already been pointed out hereinabove, Plaintiff was not prohibited from speaking during the City Council meeting. He was recognized by Mayor Scoville, the presiding officer, and was never told he could not speak to the Council, or address the issue he wanted to address. Further, there is no evidence that even Councilman Barber ever attempted to prevent Plaintiff from addressing *the issue he had come before Council to address*, i.e., his City budgetary and/or financing concerns. Rather, the dispute between Councilman Barber and the Plaintiff was not of an official, public matter at all. It was a *personal* dispute between these two individuals that arose when Plaintiff's own evidence shows he continued to address Councilman Barber personally and by his first name, to which Barber objected, instead of addressing the presiding Officer or the Council as a whole. Cf. Shigle v. Mount Pleasant Borough, et al., No. 03-1433, 2005 WL 3070944, at * 4 (W.D.PA. Nov. 16, 2005)[Noting that public bodies may confine their meetings to specified



subject matter and restrict citizens from speaking out of turn or with respect to non-germane issues].

Indeed, it would have arguably been within Mayor Scoville's authority to refuse to allow Plaintiff

to continue with his presentation at all if he had made a determination that Plaintiff's conduct

demonstrated he was not going to abide by decorum or the rules of Council.  Cf. Steinberg v.

Chesterfield County Planning Commission, 527 F.3d 377, 384-385 (4th Cir. 2008)[Governmental

entity may impose reasonable restrictions to preserve the civility and decorum necessary to further

the forum's purpose of conducting business]; Eichenlaub v. Township of Indiana, 385 F.3d 274, 281

(3rd Cir. 2004)["[F]or the presiding officer of a public meeting to allow a speaker to try to hijack the

proceedings, or to filibuster them, would impinge on the First Amendment rights of other would-be

participants"]; Shigle, 2005 WL 3070944, at * 4 [Noting that public bodies may confine their

meetings to specified subject matter and restrict citizens from speaking out of turn or with respect

to non-germane issues].

Of course, Plaintiff contends that there was nothing wrong with him addressing

Councilman Barber by his first name or in the way he did, and therefore it would have violated his

rights if Scoville refused to allow him to address Barber or the Council in this manner.  However,

the Court need not even reach that issue because the evidence clearly shows that, before Mayor

Scoville had time to take any action, Plaintiff himself announced he was not going to proceed and

left.  There is no evidence that Mayor Scoville ever attempted to prevent Plaintiff from continuing

with his presentation or to restrict him from addressing City Council on a public issue, nor does the

evidence show that Councilman Barber ever attempted to do so.  Rather, Councilman Barber told



the Plaintiff to stop personally addressing him and using his first name in his presentation.[5] No First Amendment violation is presented in this evidence. If the evidence showed that Barber (or anyone else) had attempted to prevent Plaintiff from addressing Council on a matter of public concern, or even at all, then the finding of this Court might be otherwise. Cf. Steinberg, 527 F.3d at 386-387 [Noting distinction between personal comments directed at an individual from speech directed at substantive ideas or procedures at issue]. However, Plaintiff was never told by Scoville or anyone else that he could not make or finish his presentation to Council on the matter of public concern that he was present to address. The evidence shows that after Plaintiff and Councilman Barber got into a brief *personal dispute* concerning Plaintiff's use of Councilman Barber's first name and addressing him personally instead of Council as a whole, all of which lasted only a few seconds (as is clearly shown by the videotape of this incident), Plaintiff himself announced he was not going to continue with his presentation and voluntarily left the meeting, even while the presiding officer was attempting to address the dispute between the two individuals so that the meeting could continue.

Hence, while Plaintiff may have some other legal avenue he could potentially pursue against Barber (and, indeed, the undersigned notes that Plaintiff has also sued Barber individually in this lawsuit for a state law claim of verbal assault), he has failed to present evidence sufficient to give rise to a genuine issue of fact as to whether Barber violated his First Amendment right to

---

[5]The constitutionally protected right to free speech does not equate to a right to speak unchallenged. In any event, Defendants assert that Barber's comments about Plaintiff not wanting him to "step from behind this podium" were made in a joking manner. However, Plaintiff contends that Barber's comments were not a joke and were directed at him in a hostile manner, and for purposes of summary judgment the undersigned has assumed Plaintiff's version of the event, that Barber's comments were directed at him in a hostile, non-joking manner, to be correct. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996)[At summary judgment the facts and evidence are considered and discussed in the light most favorable to the party opposing summary judgment].



freedom of speech.  Cf., also Steinberg, 527 F.3d at 386-387 [Finding that Plaintiff had no viable First Amendment claim against Commission member after Commission member's verbal confrontation with speaker during Commission meeting resulted in Commission Chairman refusing to allow speaker to continue].  Therefore, Plaintiff's First Cause of Action in his Complaint is without merit and should be dismissed.

## II.

### (Second Cause of Action)

Plaintiff alleges in his Second Cause of Action that the Defendants City of Georgetown, Scoville, Howard, Mercer and Gardner engaged in a conspiracy to deny him equal protection of the laws in violation of 42 U.S.C. § 1985(3).  Specifically, Plaintiff alleges that the City, Howard, Mercer and Gardner, with the knowledge and consent of Mayor Scoville, conspired to implement policies that required Plaintiff to obtain the consent and physical presence of armed city police officers prior to being able to exercise his freedom of speech, right to petition the government, and to freely associate with city employees, policies applied to no other citizens, and in particular to citizens who are in agreement with the City or that did not wish to criticize city employees or elected officials.  See Complaint, ¶ ¶ 47-48.

In order to maintain a conspiracy claim under § 1985(3), Plaintiff must have evidence showing  1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; 3) an act in further of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1974); see Simmons v. Poe, 47 F.3d 1370, 1376-1377 (4th Cir.



1995); see also Garvin v. Bargmann, No. 08-2937, 2009 WL 735138 at * 2 (D.S.C. Mar. 18, 2009)[Must be state actors or acting under color of state law or in concert with]. The Supreme Court has further held that, in addition to these criteria, a Plaintiff must show that the alleged conspiracy was motivated by "some racial, or perhaps otherwise class-based invidiously discriminatory animus". Id., at 102. See also Trerice v. Summons, 755 F.2d 1081, 1084 (4th Cir. 1985).

Plaintiff has not alleged a racial or some similar type of component in this case; rather, Plaintiff asserts his conspiracy claim as a "class of one". The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where [the] plaintiff alleges that [he or she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Willis v. Town of Marshall, No. 07-1404, 2008 WL 1897528 at * * 6 (4th Cir. April 30, 2008) (unpublished) quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). However, Plaintiff has failed to submit evidence to satisfy this standard in this case. Even assuming for purposes of summary judgment that other citizens coming to City Hall to conduct business are "similarly situated" to the Plaintiff,[6] and further assuming for purposes of summary judgment that the Defendants Howard, Mercer and Gardner, with the acquiescence and/or approval of Scoville, acted together in the manner alleged in the Complaint, Plaintiff has failed to show that there was no rational basis for the difference in his treatment.

First, there is no dispute in the evidence that when Plaintiff appeared at City Hall on

---

[6]It is arguable that the only individuals "similarly situated" to the Plaintiff would be other individuals whom the City or City officials have deemed to be disruptive or who city employees have a fear or apprehension of being around without security being present, not just other citizens in general who have no history with the City that may have caused such concerns. However, the undersigned does not need to reach that issue since, for the reasons set forth hereinabove, Plaintiff's claim is subject to dismissal in any event.



May 13, 2010 for the purpose of reviewing FOIA documents, he became very upset when City Clerk Howard did not allow him to view the documents in a separate room and copy them using a personal scanner. Mercer testified that Plaintiff appeared in her office on that day and told her he had an appointment with Howard, and that while she was in the process of calling Howard Plaintiff began asking her about an email he had sent regarding the minutes of the February meeting. Mercer testified that when Plaintiff did not like her answer, he began to "get much louder at that point in time", causing Mercer to become "nervous and, frankly, frightened". <u>Mercer Deposition</u>, pp. 87-88. Mercer further testified that the "tone of [Plaintiff's] voice and the volume of the voice that [Plaintiff] were asking (sic) me the questions was very intimidating to me". <u>Id</u>., p. 132. Plaintiff then left Mercer and went to see Howard, at which time he also became upset with her when he was not allowed to review and scan his FOI request as he wished. Howard testified that Plaintiff "became very upset and began to flail [his] arms, and [his] voice became very agitated and [he] became very loud." <u>Howard Deposition</u>, p. 80. Howard additionally testified that Plaintiff had become upset over questions about an FOIA request or something else, resulting in a city employee becoming scared "so badly" she pressed the "panic button". Howard testified that during the May 13th incident, because Plaintiff was "yelling and screaming at [Howard] so loudly and hanging over [her] desk and again flailing [his] arms, that [Mumford] pressed the panic button". <u>Howard Deposition</u>, pp. 113-114.

   Even Plaintiff admits in his Complaint and in his deposition that during the incident of May 13, 2010, he felt "provoked", that he became "upset" and "indignant", and that he "raised [his] voice to her", although Plaintiff testified that he never threatened Howard and was never violent. <u>Plaintiff's Deposition</u>, pp. 27-28, 31; <u>see</u> <u>also</u> <u>Complaint</u>, p. 7. Then, when Plaintiff left



Howard, he saw Mercer again, at which time Plaintiff again concedes that he was "still upset".

<u>Plaintiff's Deposition</u>, p. 33. For her part, Mercer testified that she always felt intimidated whenever Plaintiff approached the office or her, "very nervous and anxious", because Plaintiff would frequently become upset when people were not available he wanted to see or if he had to wait too long. <u>Mercer Deposition</u>, pp. 31-32. Mercer testified that on "many occasions" Plaintiff would become very loud and boisterous, that "his stance" would be intimidating when he was speaking to her, and that she "felt intimidated because of the way [Plaintiff] acted and the way [Plaintiff] spoke when [he] came in. <u>Id</u>., pp. 46-47. Mercer testified that Plaintiff would flail his arms and scream at the top of his lungs, described him as a "bully", and that she was afraid to be alone with him. <u>Id</u>., p. 146. Mercer also testified that, even prior to the incident of May 13, 2010, she had made her managers aware of how she felt. <u>Id</u>., p. 64.

   With respect to the incident of May 13, 2010, Plaintiff had already left City Hall by the time police Officer Clark arrived. City personnel told Clark that Plaintiff was loud and kept asking the same questions over and over, that he went into a conference room and interrupted a personnel meeting, and that after Mumford had pressed the panic button for the police to respond, Plaintiff had left the building by "slamming the door open". <u>See Defendants' Exhibit G</u> [Incident Report]. Mercer's superior (Howard) testified that she believed Mercer was in fear because she was not accustomed to someone yelling and screaming and engaging in the type of aggressive behavior that Plaintiff displayed, and that she had also "expressed that she has seen [Plaintiff] in the past sticking out [his] tongue in a City Council meeting" and was otherwise being disruptive during a previous City Council meeting. <u>Howard Deposition</u>, pp. 149-150.

   In support of his claim, Plaintiff has submitted an affidavit from Lee Padgett, who



went with Plaintiff to City Hall on May 27, 2010, and again on June 23, 2010, and who attests that "During the whole time (June 23rd), [Plaintiff] was calm.  He and Mrs. Howard's voices might have been raised a bit, but he was never physically threatening."  See Plaintiff's Exhibit X [Padgett's Second Affidavit], # 5.  However, it is uncontested in the evidence that after Plaintiff had been advised that, due to city employees' concerns, in the future he needed to coordinate with city personnel when coming to City Hall so that a law enforcement officer could be present, Plaintiff deliberately showed up at City Hall on both May 27, 2010 and June 23, 2010 without notifying anyone so that city personnel would not have an opportunity to notify a police officer to also be present.  See Plaintiff's Deposition, p. 97.  When Howard then refused to see him until a police officer was called and had arrived, Plaintiff himself alleges in his Complaint that he became very upset.  Complaint, p. 9.  Officer Whisner, who responded to one incident, completed an incident report in which he noted that several of the city's personnel were afraid of the Plaintiff and what his demeanor was, with Howard reporting that Plaintiff was loud enough that she could hear him down the hall, and that Mercer came to her "visibly shaken" to inform her that the Plaintiff was there. Howard told Officer Whisner that Plaintiff's conduct was "intimidating", that he "repeatedly pointed his finger at me", that this was the third time Plaintiff had disturbed staff in the last month, that his conduct had raised a "high level of concern", and that everyone was scared of what Plaintiff was going to do or could possibly do.  See Incident Report (Defendants' Exhibit I), with attached voluntary statements.

Howard also testified at her deposition that, in her position as risk manager, "one of the things we are trained to do is to look at trends and potentials, and at the end of day, if I have employees that have expressed to me on a number of occasions that they are fearful of [the Plaintiff],



then I have to take that into consideration. And when I have personally experienced that - and [Plaintiff has] a very aggressive nature, and that is how it is making [the city employees] feel - I have to wonder, I have to anticipate based on that behavior would there be anything else capable of any physical assault or anything. And the potential could be there based on [Plaintiff's] behavior. [Plaintiff is] very aggressive". <u>Howard Deposition</u>, pp. 164-165. Other city employees echoed similar concerns. <u>See</u> Defendants' Exhibit I (Incident Report), attached voluntary statements of city personnel; <u>see also</u>, <u>Gardner Deposition</u>, p. 43. Further, as with the earlier incident, Plaintiff himself conceded in his deposition that during this visit he again raised his voice because he was "agitated" with Howard. <u>Plaintiff's Deposition</u>, pp. 53-54.

   For Plaintiff to succeed on this claim, the evidence before the Court must be sufficient to give rise to a genuine issue of fact as to whether there was no rational basis for the difference in treatment Plaintiff received compared to other citizens who came to City Hall. <u>Cf</u>. <u>Giarratano v. Johnson</u>, 521 F.3d 298 (4th Cir. 2008)[Affirming the dismissal of a complaint that failed to adequately set forth the absence of a rational basis supporting the Plaintiff's disparate treatment]; <u>Ruttenberg v. Jones</u>, No. 07-1037, 2008 WL 2436157, at * 8 (4th Cir. June 17, 2008) [same]. Here, the evidence before the Court clearly shows that concerns had been expressed to Howard and the City Administration by numerous city employees about Plaintiff's conduct and the way he acted towards city employees, and that many city employees were fearful of him. Plaintiff also admits that he deliberately disobeyed the City's instructions to let them know when he was coming so that a police officer would not be present when he was at City Hall on at least two occasions (May 27, 2010 and June 23, 2010). Other than to argue that the city employees' fears of him were unjustified, Plaintiff does not dispute this evidence, nor does he dispute that on his visits



to City Hall he became agitated with city employees, spoke in a loud voice, and would get upset and express his displeasure with city employees. Plaintiff's Deposition, pp. 31, 53-54.

If Plaintiff has a problem with the way the City responds to his FOIA requests, then he is entitled to pursue whatever remedies may be available to him under that statute in state court. However, the undersigned can discern no unlawful "conspiracy" by the Defendants to deprive Plaintiff of his constitutional rights because they wanted a city police officer to be on hand whenever Plaintiff was going to be coming to City Hall under these circumstances. The evidence clearly reflects that Plaintiff was not barred from coming to City Hall, that city officials did not prohibit him from receiving materials in response to his FOIA requests, and that he could come to City Hall to conduct other city business just like any other citizen. See also, Plaintiff's Deposition, pp. 50-51. The only difference was that, due to the well documented history of contentious relations and dealings between the Plaintiff and several city employees (as is shown by Plaintiff's own evidence, as well as the Defendants), the City administration deemed it prudent to have a security officer be on hand when he was at City Hall. There was nothing unconstitutional about the City's conduct here. See Sylvia Dev. Corp. v. Calvert County, MD., 48 F.3d 810,818 (4th Cir. 1995)[Persons may be treated differently as long as the reasons for such different treatment are "reasonable, not arbitrary, and . . . rest upon some ground of difference having a fair and substantial relation to the object of the legislation"], quoting Royster Guano Co. v. Virginia, 235 U.S. 412, 415 (1920). Cf. Black v. Safer Foundation, No. 02-2751, 2003 WL 21823483 at * (N.D.Ill. Aug. 6, 2003)[Concluding that the requirement of an escort was a restriction that at most was a mere inconvenience and not unlawful].

There is not only nothing unconstitutional in these facts, the Court can easily envision

26



circumstances under which the City could be held liable if, under the facts presented, it *failed* to take prudent steps to ensure the safety of its employees, and some misfortune occurred.  See also, Scoville Deposition, pp. 67-68, 126; Gardner Deposition, p. 43.  Therefore, Plaintiff's Second Cause of Action is also subject to dismissal.

### III.

### (Pendant State Law Claims)

If the Court adopts the recommendations set forth hereinabove with respect to Plaintiff's federal constitutional claims, the only claims remaining in this lawsuit will be Plaintiff's pendant state law claims for defamation, civil assault, conspiracy to defame, and conspiracy to commit civil assault against various Defendants.  Where federal claims in a lawsuit originally filed in United States District Court are dismissed, leaving only state law causes of action, any remaining state law claims should be dismissed without prejudice, so that the Plaintiff can pursue any such state law claims in state court.  See generally, United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"]; Carnegie-Mellon v. Cohill, 484 U.S. 343, 350, n. 7 (1988) ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."].[7]

This will not only allow the Plaintiff to obtain a ruling as to the viability of his state

---

[7]The parties could, of course, maintain their state claims in this court even without Plaintiff's federal claims if there was diversity jurisdiction in this case.  See 28 U.S.C. § 1332(a).  However, all of the parties are alleged to be South Carolina residents.  See Complaint, pp. 6-14; Answer, pp. 5-12.  Therefore, diversity jurisdiction is not available in this case.



law claims from a more appropriate forum, but if his claims were to survive summary judgment, it would be much more appropriate for those state law claims to be tried in state court. Dismissal of Plaintiff's state law claims would also not prejudice the Plaintiff, as the parties could seek a fast track for resolution of these claims at the state level; See Rule 40(c), S.C.R.Civ.P.; and there are no statute of limitations problems because federal law also provides for tolling of statutes of limitation for state claims during the period they were pending in federal court and for thirty days afterwards. See 28 U.S.C.A. § 1367(d); Jinks v. Richland County, 538 U.S. 456 (2003); Hedges v. Musco, et al., 204 F.3d 109, 123-124 (3rd Cir. 2000); Beck v. Prupis, 162 F.3d 1090, 1099-1100 (11th Cir. 1998) ["a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days"]; cf. National Federation of Independent Business v. Sebelius, 132 S.Ct. 2566, 2592 (2012).

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment with respect to Plaintiff's federal claims as set forth in his First and Second Causes of Action be **granted,** and that those claims be **dismissed**. With respect to Plaintiff's remaining pendant state law causes of action, it is recommended that those claims be **dismissed**, without prejudice. Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988) [Noting that federal courts should generally decline to exercise pendant jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit]. This will allow Plaintiff to pursue his remaining state law claims in state court, if he chooses to do so. See Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998)["Section 1367(d) ensures that the plaintiff whose supplemental jurisdiction is dismissed has at least thirty days after dismissal to refile in state court."].



The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

June 26, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

