IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James M. Tennant, | ) |
| Plaintiff, | ) Civil Action No.: 2:12-370-RMG |
| v. | ) **ORDER** |
| City of Georgetown, a Municipal Corporation; Brendon M. Barber, Sr., in his individual and official capacity; Jack M. Scoville, Jr., individual and official capacity; Cindy Howard, in her individual and official capacity; Ann Mercer, in her individual and official capacity; and Paul Gardner, in his individual and official capacity, | ) |
| Defendants. | ) |

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. No. 102). As explained herein, the Court adopts the Magistrate's Report and Recommendation and GRANTS Defendants' motion. Plaintiff's Counts One and Two are therefore dismissed and Counts Three, Four, Five and Six, being pendant state motions, are dismissed without prejudice.

## Background

On February 8, 2012, Plaintiff James M. Tennant ("Plaintiff") filed a *pro se* Complaint alleging, *inter alia*, violations of his First Amendment and Fourteenth Amendment rights under 42 U.S.C. § 1983. As a result, this case was automatically referred to a United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC. Having disposed of some initial motions on the scope of the complaint and asserted rights to arbitration, the Court now considers Defendants' Motion for Summary Judgment, filed on October 4, 2013 (Dkt. No. 102), the associated supporting

1

memorandum and affidavits filed on the same dates (Dkt. No. 103; Dkt. No. 103-1 through 103-14), and Plaintiff's Response in Opposition to the motion filed December 20, 2013 (Dkt. No. 117). Magistrate Judge Marchant filed a Report and Recommendation ("R&R) on June 26, 2014 (Dkt. No. 120) and on August 4, 2014, Plaintiff filed objections to the R&R (Dkt. No. 46).

## Facts

The facts entail a series of disputes between Plaintiff, a citizen active in local (City of Georgetown) government affairs, and various City officials and employees. Claim One arises from a city council meeting on February 18, 2010, when Plaintiff was on the agenda to discuss city financing and the use and availability of certain accounts and assets. The parties' disagreements as to certain details of Plaintiff's interactions with City officials and employees are, at this stage in litigation, taken by the Court in the light most favorable to the plaintiff. Therefore, for purposes of considering this motion, the Court reviews the following exchange, as transcribed by Plaintiff and included in his complaint:

> TENNANT: Let's talk about the twenty-one million dollars Brendon. You brought it up, so let's talk about it.
> BARBER: Mr. Mayor?
> SCOVILLE: Yes sir?
> BARBER: He's supposed to be addressing you and Council. I'm not going to get into a one-on-one with him.
> TENNANT: Brendon, you just brought my name up while I was sitting back here – by implication.
> SCOVILLE: (BANGING GAVEL) OK, both of y'all.
> BARBER: You don't want me to step from behind this podium.
> SCOVILLE: (BANGING GAVEL) OK, both ...
> BARBER: Alright?
> TENNANT: Pardon me?!?
> BARBER: You heard what I said.
> SCOVILLE: (BANGING GAVEL) OK
> BARBER: You got the wrong, the wrong council member.
> CITY ADMINISTRATOR ELDRIDGE: (LAUGHS HEARTILY)
> TENNANT: Excuse me. I just really can't even be involved in a situation where a city councilmember says something like that. I don't even want to address you now. Goodbye.

SCOVILLE: Well thank you. Ok.

Compl. ¶ 24.

After this exchange, Plaintiff left the meeting.

Plaintiff's second claim arises out of a series of visits he made to City Hall to review documents he requested pursuant to the South Carolina Freedom of Information Act ("SCFOIA"). At the first visit on May 13, 2010, during which he was required to review the documents in an employee's office and not allowed to copy them using his own scanner, he became, according to his own affidavit, "provoked," "upset," and "indignant," and "raised [his] voice." R&R at 22. According to affidavits from City employees, Plaintiff was "very upset," "very agitated," "very loud," "intimidating," and after he screamed at the top of his lungs and flailed his arms, one employee pressed the "panic button" at her desk, summoning the police. *Id.* at 23. After this incident, he was advised that any future visits to City Hall would require police presence and that he should call ahead to schedule such visits, which he refused to do. Further incidents are detailed in the summary judgment filings, as Plaintiff and City employees continued to butt heads over SCFOIA proceedings, and the police were called to respond to unannounced visits from the plaintiff at least twice. R&R at 25. One employee testified that at her deposition that, in her position as risk manager, "one of the things we are trained to do is to look at trends and potentials, and at the end of day, if I have employees that have expressed to me on a number of occasions that they are fearful of [the Plaintiff], then I have to take that into consideration. And when I have personally experienced that – and [Plaintiff has] a very aggressive nature, and that is how it is making [the city employees] feel - I have to wonder, I have to anticipate based on that behavior would

3

there be anything else capable of any physical assault or anything. And the potential could be there based on [Plaintiff's] behavior. [Plaintiff is] very aggressive." *Howard Deposition*, pp. 164-165, cited by R&R at 25.

## Law/Analysis

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.*

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### Count One

After reviewing the record of this matter and the applicable law, the Court adopts the conclusion of the Magistrate Judge and dismisses Count One as to all defendants. As the R&R explains, the City itself may only be held liable for Section 1983 violations of its representative (in this case, Barber, for his comments to Plaintiff at the City Council meeting) if "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). Plaintiff objects that "the entire City Council was involved and condoned what happened . . . *Monell* liability exists and the City is properly named as a defendant." Objection to Magistrate R&R at 21. The only authority cited, *Vergara v. City of Waukegan*, is an Illinois case not binding on this Court, and it concerned an actual decision on behalf of the city by the city council chair on who could or could not speak, which the council let stand as a binding city ruling. Here, no allegation has been made that Barber had such authority to act for the City, or attempted any such decision. The City is therefore not implicated in Claim One, and is dismissed. Similarly, Mayor Scoville, also named as a defendant, had only a neutral role in the altercation, and is shown in the transcript above

reprimanding both Barber and the plaintiff. Although he did later make a negative comment ("why didn't we think about that a long time ago?"), it only emerged after the plaintiff had left the room, and could not have possibly affected his decision not to speak on the public matter of concern.

Councilmember Barber is also named in Count One for infringing on Plaintiff's First Amendment rights. On this question, the Magistrate held that the altercation was a "personal dispute" concerning the use of Barber's first name, and that under case law concerning decorum in public assemblies, the Council had the authority to regulate the manner and civility of Plaintiff's remarks. Dkt. No. 120 at 18-19. Plaintiff argues, however, that the R&R failed to interpret the facts in a light most favorable to his case, and that he was not actually being reprimanded for using Barber's first name. Dkt. No. 128 at 6-14. The objections filed with the Court argue extensively on the question of whether Plaintiff actually addressed Barber first, or using his first name, and whether Scoville failed to maintain proper decorum in the meeting. All of this is beside the point.

The problem for the plaintiff is that even if the Court, out of an abundance of caution and respect for the deferential summary judgment standard, were to reject the R&R's conclusion that the City Council altercation between himself and Councilman Barber was a "personal dispute," he has provided no evidence to support his claim that the words exchanged actually constituted a *restriction on his protected right to free speech*, which is his claim of action. He was not gaveled down, told to leave, limited in subject matter or scope, or otherwise inhibited from expressing the views he intended to express. Plaintiff's conclusory statements that the altercation was related to his views on City finances, unsupported by any information obtained in discovery, are merely assertions, insufficient to raise a genuine issue for trial.

6

When a plaintiff asserts a First Amendment claim, the court's first inquiry is whether the plaintiff has engaged in "protected speech." *Goulart v. Meadows*, 345 F.3d 239, 246 (4th Cir. 2003) (citing *Cornelius v. NAACP Legal Def. And Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)). And as the Magistrate held, Plaintiff's speech "addressing the Council on city budgetary issues was clearly protected by the First Amendment." R&R at 16. And there is no dispute that a City Council meeting is a public forum subject to First Amendment protection. However, further analysis under Fourth Circuit First Amendment law normally proceeds to the question of "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius*, 473 U.S. at 797; *accord Goulart*, 345 F.3d at 246. Plaintiff and his speech were not excluded from the forum – he walked out, after taking offense to a Council member's words.

As to the content of Barber's statements, the transcript he provided and the online video of the incident cited by all parties certainly show animosity between himself and Councilman Barber, and as the Magistrate noted, Plaintiff has brought separate state claims alleging an unlawful verbal assault by Barber. However, Plaintiff's theory of retaliation for First Amendment purposes, as articulated in *Saurez Corp. Indus. v. McGraw*, would require that he allege an action or statement by Barber that "was threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 689 (4th Cir. 2000). Retaliation can be shown through a weighing of the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts. *Id.* at 686. Here, Plaintiff has not alleged facts sufficient to show that Barber would have or could have exercised any actual authority over him to inflict "punishment, sanction, or adverse regulatory action." Neither has he alleged facts that would show that Barber's statements about leaving his podium were related to

the question of how the City was handling its financial accounts. To the extent that Plaintiff felt he had been verbally assaulted, the issue in question is indeed verbal assault, not speech-related retaliation by a public official for particular public issue-related speech content.

As Plaintiff points out, others present described the exchange as "an invitation to fight," (*Padgett Affidavit*) "shocking . . . uncivilized . . . cruel," (*Roberts Affidavit*) "disturbing . . . bully[ing]," and lacking in "decency" (*Prince* Affidavit). Be that as it may, incivility does not itself show a Constitutional violation. The Court finds that the Magistrate properly applied the law to this case and therefore dismisses Claim One.

**Count Two**

As to Count Two, there is no question that the Defendants are not liable. For Plaintiff to succeed on his equal protection claim, which asserts that he should not be subject to police presence that is not assigned to others reviewing SCFOIA documents, the evidence before the Court must be sufficient to give rise to a genuine issue of fact as to whether there was no rational basis for the difference in treatment Plaintiff received compared to other citizens who came to City Hall. *See Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008).

As the Magistrate held, "If Plaintiff has a problem with the way the City responds to his FOIA requests, then he is entitled to pursue whatever remedies may be available to him under that statute in state court. However, [I] can discern no unlawful 'conspiracy' by the Defendants to deprive Plaintiff of his constitutional rights because they wanted a city police officer to be on hand whenever Plaintiff was going to be coming to City Hall under these circumstances." The Court agrees. R&R at 26.

**Counts Three, Four, Five and Six**

Having adopted the Magistrate's recommendations with respect to Plaintiff's federal claims, the only claims remaining are the pendant state law claims for defamation, civil assault, conspiracy to defame, and conspiracy to commit civil assault against the defendants. A federal court has discretion to decide pendant state law claims if federal and state claims arise out of a common nucleus of operative facts; however, if the federal claims are dismissed before trial, the state claims are normally dismissed as well. *E.g., United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Webb v. McCullough*, 828 F.2d 1151, 1150 (6th Cir. 1987). Counts Three, Four, Five and Six are hereby dismissed without prejudice.

**Conclusion**

After a thorough review of the record, the Magistrate's Report and Recommendation, and the relevant case law, the Court adopts the Magistrate's Report and Recommendation and **GRANTS** Defendants' Motion for Summary Judgment (Dkt. No. 102).

**AND IT IS SO ORDERED.**

The Honorable Richard Mark Gergel
United States District Court Judge

August 15, 2014
Charleston, South Carolina